# First District Court of Appeal
## State of Florida

———————————————

No. 1D2025-2911

———————————————

CITY OF PANAMA CITY, FLORIDA,

    Appellant,

    v.

BAMBI'S DOLL HOUSE, INC.,

    Appellee.

———————————————

On appeal from the Circuit Court for Bay County.
William Scott Henry, Judge.

July 22, 2026

TREADWELL, J.

Panama City attempted to shut down an adult club, Bambi's Doll House (Bambi's), based on an alleged "change of ownership" that removes Bambi's permission to continue operating in the City's "Tourism Corridors." Bambi's corporate owner, Appellee Bambi's Doll House, Inc., sought declaratory judgment that Bambi's had no "change of ownership" because it has retained the same corporate owner since 1998. The trial court granted summary judgment in Appellee's favor, ruling (1) that Bambi's had no "change of ownership" under the plain language of that phrase due to its consistent corporate ownership by Appellee, and (2) that the City's attempt through Ordinance No. 3058 to define "change of ownership" to encompass any sale of stock in Appellee was not

properly noticed and therefore void. Because we reverse the trial court's ruling with respect to the notice of Ordinance No. 3058, we remand the case to the trial court to adjudicate Appellee's remaining challenges to Ordinance No. 3058 in relation to the sale of stock in Appellee as Bambi's corporate owner.

I

In 1997, Panama City prohibited the establishment of sexually oriented businesses within certain Tourism Corridors. *See* Panama City, Fla., Mun. Code § 7–85 (hereinafter, the "Code"). But any pre-existing business like Bambi's Doll House was permitted to operate as a nonconforming land use and remained legal. It would lose its legal status, however, if it ever had a "change of ownership." *See* Code § 7–89.

On August 23, 2022, the City adopted Ordinance No. 3058 to define "change of ownership" as a "change of beneficial ownership in any degree, including any change in the stockholders of the business, any transfer of the business's stock from one stockholder to another, or any transfer of stock in a corporation owning such business, even when the name of the entity remains the same." Code § 7–82.

This definition is important because in late 2022, the owner of all stock in Appellee (the corporate owner of Bambi's) sold the stock to a new owner, Adrian Jessome. Negotiations over the 100% stock sale (including money deposits) began in July 2022, prior to the adoption of Ordinance No. 3058, but the sale itself did not finalize until December 2022, after its adoption. When the City learned of the stock sale, it issued a "Notice of Violation" to Bambi's, demanding the cessation of its operations.

Appellee filed this action against the City for declaratory judgment. Among the various claims, Appellee alleged that Ordinance No. 3058 is null and void because the City did not follow the notice requirements of section 166.041(3)(c), Florida Statutes. And if the Ordinance is null and void, the 100% stock sale did not otherwise constitute a "change of ownership" of the sexually oriented business due to its consistent corporate owner. The trial court agreed with both legal arguments and granted summary judgment against the City.

2

## II

Regarding the notice required for Ordinance No. 3058, "[o]ur analysis begins with the plain language of the statute." *Rogers v. State*, 301 So. 3d 1083, 1084 (Fla. 1st DCA 2020). Section 166.041(3)(a), Florida Statutes, provides the public notice requirements for municipal ordinances in general. § 166.041(3)(a), Fla. Stat. (2022). But certain ordinances have more specific notice requirements. Section 166.041(3)(c), Florida Statutes, provides the procedures that municipalities must follow when adopting ordinances "that change the actual list of permitted, conditional, or prohibited uses within a zoning category, or ordinances initiated by the municipality that change the actual zoning map designation of a parcel or parcels of land." § 166.041(3)(c), Fla. Stat. (2022). There is no dispute that the City did not use the more specific notice procedures in section 166.041(3)(c). The only dispute is whether section 166.041(3)(c) applies to Ordinance No. 3058 in the first place.

By its clear terms, Ordinance No. 3058 added a definition of "change of ownership" to the portion of the Code that regulates sexually oriented businesses. That definition affects when a sexually oriented business loses its nonconforming–use privilege to operate within the Tourism Corridors where sexually oriented businesses are otherwise prohibited. The definition does not, in any way, "change the actual list of permitted, conditional, or prohibited uses within a zoning category" or "change the actual zoning map designation of a parcel or parcels of land." § 166.041(3)(c), Fla. Stat. (2022). The permitted, conditional, and prohibited uses within the Tourism Corridors remained the same both before and after the adoption of Ordinance No. 3058. The trial court therefore erred by concluding that Ordinance No. 3058, "as applied, . . . created a change in permitted or conditional uses of certain properties." In fact, as counsel for Appellee conceded at oral argument, Bambi's could have continued to legally operate under Ordinance No. 3058 had Appellee's owner not proceeded with the subsequent stock sale. Ordinance No. 3058 therefore did not change any permitted or conditional land uses, and certainly not any "actual list" of such land uses. *Id.* Accordingly, the notice requirements of section 166.041(3)(c) did not apply to Ordinance No. 3058.

In ruling otherwise, the trial court relied on case law that pre-dated the current version of section 166.041(3)(c). In *City of Sanibel v. Buntrock*, 409 So. 2d 1073 (Fla. 2d DCA 1981), the Second District held that "[i]f an ordinance substantially affects land use, it must be enacted under the procedures" of section 166.041(3)(c). *Id.* at 1074–75. Similarly, the Fourth District in *3299 N. Federal Highway, Inc. v. Board of County Commissioners of Broward County*, 646 So. 2d 215 (Fla. 4th DCA 1994), observed that "courts have generally held that municipal ordinances which *substantially impair the use of land* are invalid if they were not enacted with the formality required under section 166.041(3)(c)." *Id.* at 223. From these cases, the trial court embraced an analysis that considered whether Ordinance No. 3058 "substantially affected or impaired" the use of land.

But the text of section 166.041(3)(c) was materially different when the Second and Fourth Districts applied it in the above cases. In *City of Sanibel*, section 166.041(3)(c) applied to ordinances "which rezone private real property." § 166.041(3)(c), Fla. Stat. (1979). In *3299 N. Federal Highway*, section 166.041(c)(3) applied to ordinances "which rezone specific parcels of private real property or which substantially change permitted use categories in zoning districts." § 166.041(3)(c), Fla. Stat. (1993).

In 1995, the Legislature replaced the above text with the current version, which expressly applies section 166.041(3)(c) to ordinances "that change the actual list of permitted, conditional, or prohibited uses within a zoning category, or ordinances initiated by the municipality that change the actual zoning map designation of a parcel or parcels of land." Ch. 95–310, § 5, Laws of Fla. Because the Legislature deleted the words "substantially change" and replaced them with the words "change the actual list" and "change the actual zoning map designation," no reading of the current section 166.041(3)(c) supports the substantially–affected analysis embraced by the trial court. Instead, the statute only covers a revision to the City's "actual" list of land uses or its "actual" zoning map. § 166.041(3)(c), Fla. Stat. (2022). The Legislature's remarkable use of the word "actual" emphasizes just how much it intended to create bright lines for municipalities to know when section 166.041(3)(c) applies. As a result, its application is no

4

longer an arguable circumstance based on any "substantial" effect of a given ordinance.

This interpretation is further buttressed by the context in which the Legislature amended section 166.041(3)(c) in 1995. *See Barnes v. State*, 399 So. 3d 376, 377 (Fla. 1st DCA 2024) ("In interpreting a statute, our task is to determine what the Legislature actually said in the statute based upon the common meaning of the words used and their context."). Before its passage, the House Committee on Community Affairs described the underlying problem of "confusion by local governing body officials" regarding which enactment procedures to utilize when passing an ordinance and further noted that "[t]he problem is particularly severe in the land use area." Fla. H.R. Comm. on Cmty. Affs., HB 2055 (1995) Final Bill Analysis 10 (May 16, 1995). The Committee explained,

> A series of court cases and statutory amendments have expanded the applicability of the rezoning ordinance enactment procedures to nearly all ordinances that somehow *affect* the use of land. Coupled with a long-standing judicial doctrine that all ordinances that have been enacted improperly are null and void or are of no effect, a lot of litigation concerns the validity of ordinances based entirely on the enactment procedure.

*Id.* at 11–12 (emphasis added). Given this context of confusion and litigation surrounding the prior statutory language covering ordinances that "substantially change" land uses, the revised language that limits and specifies its coverage of only changes to the "actual" lists and "actual" maps serves as a clear repudiation of the more nebulous substantially–affects analysis that had previously led to such confusion and litigation before 1995.

Finally, the substantially–affects analysis embraced by the trial court is not saved by this Court's post-1995 opinion in *Webb v. Town Council of Town of Hilliard*, 766 So. 2d 1241 (Fla. 1st DCA 2000). In that case, this Court reversed a trial court's dismissal with prejudice, because the appellant could amend his allegations to potentially challenge the town council's zoning action. *Id.* at 1244–45. Part of that challenge was that the town did not comply

with the notice and public hearing provisions of section 166.041(3)(c) for the zoning action. *Id.* This Court wrote,

> Under Florida law, ordinances which substantially affect the use of land must comply strictly with the notice requirements of § 166.041(3)(c)1., Fla. Stat. This provision states in pertinent part:
>
>> (c) . . . Ordinances that change the actual list of permitted, conditional, or prohibited uses within a zoning category, or ordinances initiated by the municipality that change the actual zoning map designation of a parcel or parcels of land shall be enacted pursuant to the following procedure: . . .

*Id.* at 1244. Notably, this Court in *Webb* cited no authority for its statement about "ordinances which substantially affect the use of land." Rather, it immediately proceeded to quote the post-1995 text of section 166.041(3)(c) which clearly limits its application to ordinances that change the "actual list" of land uses or the "actual zoning map designation" of land parcels. Thus, at most, this Court in *Webb* was merely describing the effect of such ordinances covered by the text of section 166.041(3)(c) as ones that "substantially affect the use of land." Given the immediate statutory quotation, it could not have intended to supersede the post-1995 text of section 166.041(3)(c) with a renewed substantially–affects analysis. In other words, the *Webb* opinion did not resurrect the analysis which the Legislature repudiated in 1995.

For these reasons, we reverse the trial court's conclusion based on the outdated substantially–affects analysis. Because Ordinance No. 3058 merely clarified when a sexually oriented business loses its nonconforming–use privilege to operate within the Tourism Corridors, it did not change any "actual list" of land uses or any "actual zoning map designation" of land parcels. § 166.041(3)(c), Fla. Stat. (2022). Accordingly, section 166.041(3)(c) did not apply to Ordinance No. 3058. *Cf. Testa v. Town of Jupiter Island*, 360 So. 3d 722, 723–24 (Fla. 4th DCA 2023) (affirming the circuit court's ruling that section 166.041(3)(c) did not apply to an ordinance that modified the location of the Town's waterfront setback line).

6

## III

Because Appellee raised other legal challenges to Ordinance No. 3058 on which the trial court did not rule, it is appropriate for us to review the trial court's ruling that the 100% stock sale of Appellee was not a "change of ownership" of the sexually oriented business under the plain meaning of that phrase which has existed in the Municipal Code since 1997. *See* Code § 7–89; Ord. No. 1704 (1997). In other words, if the trial court erred and the 2022 stock sale was indeed a "change of ownership," regardless of the recent definition provided by Ordinance No. 3058, then Appellee's remaining challenges to Ordinance No. 3058 are inconsequential. Bambi's would lose its legal status regardless of the remaining challenges. For the following reasons, we conclude that the trial court did not err on this point.

It is undisputed that the local business known as Bambi's Doll House has been owned since 1998 by Appellee. It is also undisputed that the stock ownership of Appellee has changed hands several times, most recently in late 2022 when Adrian Jessome bought 100% of it. The City argues that such change in the stock ownership means that the sexually oriented business has had a "change of ownership" sufficient to remove Bambi's nonconforming–use status. In other words, it argues that the sexually oriented business encompasses both the local business and its corporate owner, such that a change of ownership of the corporate owner is also a change of ownership of the sexually oriented business.

The City's expansive view of the sexually oriented business is belied by the Municipal Code's plain language. The Code states that "[t]he following businesses are declared to be sexually oriented businesses: (1) Adult book, video, or novelty store[;] (2) Adult motion picture theater[;] (3) Adult club." Code § 7–83. An "Adult club" is defined as "any place of business or commercial establishment" which offers certain live entertainment. Code § 7–82. Thus, the "sexually oriented business" is no more than the "place of business or commercial establishment" known as Bambi's Doll House; it does not include its corporate owner. *See id.*

Accordingly, there has been no recent "change of ownership" of the sexually oriented business known as Bambi's Doll House,

because it has been continuously owned by Appellee since 1998. Only through the new definition of "change of ownership" enacted by Ordinance No. 3058 does the sale of stock in Appellee implicate Bambi's nonconforming–use status under the Code. We therefore remand the case to the trial court for adjudication of the remaining claims challenging the validity and effect of Ordinance No. 3058 on the sexually oriented business at issue.

*  *  *

The judgment of the trial court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.

ROBERTS and WINOKUR, JJ., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

Scott J. Seagle and Brandon William White of Coppins Monroe, P.A., Tallahassee, for Appellant.

Louis J. Terminello and Michael Martinez of Greenspoon Marder, LLP, Miami, for Appellee.